# City of Salem v. Lee F. Webster.

1. VERDICTS—*When a Trial Court Will Refuse to Direct.*—It is the duty of a trial court to refuse to direct a verdict for the defendant where the evidence with all the inferences that may be properly drawn from it fairly tends to prove the plaintiff's cause of action as set out in the declaration.

2. PRACTICE—*Where the Trial Judge Fails to Make a Ruling—Waiver.*—Where the trial judge makes no ruling upon an objection or motion and counsel do not insist upon a ruling or except to the action of the court in failing to rule. they must be considered as waiving their objection and abandoning the motion.

3. EVIDENCE—*General Rule to Statement of Conclusions.*—The general rule is that the conclusions of a witness derived from personal observation are admissible in evidence, when, from the nature of the subject under investigation, it can not be stated or described in such language as will enable persons, not eye witnesses, to form an accurate judgment in regard to it.

4. SAME—*Competency of Witnesses to State Conclusions.*—A witness of ordinary intelligence and powers of observation, who is conversant with the facts, may testify as to whether a person appeared sick or well, worse or better, at one time than another; able to work; how far able to help himself and at what point he required assistance to do what was necessary to be done, and the like.

5. SAME—*Condition of Injured Persons—Statement of Physicians.*— A physician, when asked to give his opinion as to the cause of an injured person's condition at a particular time, may state what such person said in describing his bodily condition, if said under circumstances which free it from suspicion of being spoken with reference to future litigation.

6. CITIES AND VILLAGES— *Negligence in Leaving Ditches Unprotected.* —It is negligence in the authorities of a city to leave a ditch constructed by them wholly unprotected or without lights or danger signals during the night time.

7. ORDINARY CARE—*Conduct at Other Times than When Injured— General Habits of Fast Driving.*—Where a person was injured by driving into an unprotected ditch at night, evidence as to his general habits of fast driving at other times is not proper.

8. STREETS—*Rights of Persons Traveling Upon.*—Persons traveling upon a street in constant use by the public have the right to presume, in the absence of knowledge of its dangerous condition, that it is reasonably safe for ordinary travel throughout its entire width.

9. INSTRUCTIONS—*As to Duty of the Jury—Damages, Compensatory and Punitive.*—In actions where exemplary damages are recoverable and are sought to be recovered, it is error to instruct the jury that it is their duty to assess damages or that they "should assess damages," but it is

City of Salem v. Webster.

not error to do so in cases where compensatory damages only are recoverable.

10. SAME—*Duty of the Jury in Assessing Compensatory—Personal Injuries.*—In actions for personal injuries, where the plaintiff has exercised ordinary care and the defendant has been guilty of such negligence as has caused the injury complained of, the plaintiff is entitled to recover such damages as will compensate him for the loss actually sustained, and it is not improper to instruct the jury that it is their duty to award, by their verdict, what the law by its established principles authorizes.

11. SAME—*Presenting a Large Number of Instructions Not to be Commended.*—The practice of presenting to the court a large number of instructions repeating over and over again the same propositions of law, is not contemplated under the provisions of the practice act. It is a mischievous practice and ought to be discontinued. A few concise statements of the law applicable to the facts are all that can be required.

12. ATTORNEYS—*Latitude to be Allowed in Discussing Cases.*—An attorney must be allowed to discuss not only the words of the evidence, but the inferences that may be drawn from it, and also the interest, motive and character of the witnesses and the means resorted to to procure them, so far as the evidence and reasonable inferences therefrom will warrant.

13. DAMAGES—*When $3,000 is Not Excessive.*—A young man, twenty-three years of age, was severely and permanently injured by driving into a ditch left open and unprotected in the night time in the city of Salem. Prior to his injury he was pursuing the study of law preparatory to admission to the bar and engaged in the business of publishing a newspaper. He was unable to do any work, either physical or mental, subsequent to the injury, and resorted to every proper means in his power to effect a cure; expended for surgeons. physicians, hospital care and for necessary expenses the sum of $1,465.45. *Held*, that the sum of $3,000 was not excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Marion County; the Hon. WILLIAM FARMER, Judge, presiding. Heard in this court at the August term, 1900. Affirmed. Opinion filed March 11, 1901.

GEORGE W. SMITH, attorney for appellant; FRANK F. NOLEMAN and JOHN B. KAGY, of counsel.

L. M. KAGY, T. E. MERRITT and C. E. JENNINGS, attorneys for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case by appellee against appellant,

in the Circuit Court of Marion County, to recover damages for a personal injury. Trial was by jury. Verdict and judgment in favor of appellee for $3,000.

One of the errors assigned by counsel for appellant is the refusal of the trial judge, upon appellant's motion at the close of all the evidence, to instruct the jury to find appellant not guilty. This brings us at once to an examination and consideration of the declaration and all the evidence in the case.

The declaration contains five counts, charging in substance, that appellant caused and permitted a ditch to be dug across one of its public streets of such depth and width as to be dangerous, and negligently left the same open, unguarded and unprotected, during both day time and night time, and that by reason thereof while appellee was riding in a buggy, in the night time, along said street, in the exercise of due care and caution for his own safety, he was thrown from his buggy and seriously and permanently injured. The declaration is full and specific and in every respect properly sets up a good cause of action. The evidence is very voluminous. The abstract of it covers more than 300 printed pages. On account of its great volume we are restrained from attempting to recite and discuss it in detail, and must content ourselves with recording our conclusions upon it, as a whole. We find that there is sufficient evidence tending to establish every fact necessary to appellee's right to recover substantial damages, upon the case stated in his declaration. It follows, therefore, that the court did not err in refusing to direct a verdict in favor of appellant, for the law is now well settled in this State that it is the duty of the trial court to refuse to direct a verdict for defendant, where the evidence, with all the inferences that may be properly drawn therefrom, fairly tends to prove plaintiff's cause of action as set out in the declaration. I. C. R. R. Co. v. Harris, 184 Ill. 57.

Counsel complain of the action and rulings of the trial court as to the admission of evidence on behalf of appellee. In three instances complained of, witnesses in making

City of Salem v. Webster.

answers to questions asked, made statements to which appellant's counsel objected, and which they moved the court to strike out.   The court made no ruling as to either the objection or motion.   Counsel did not insist upon a ruling nor except to the action of the court in failing to rule, thereby waiving their objection and abandoning their motion.   In another instance neither objection nor exception were interposed, nor was there any motion to strike out.

Two witnesses, Mr. Tweed and Mr. Baird, who were not experts, it is insisted were erroneously permitted to give conclusions as to appellee's physical condition.   The witness Tweed, among other things, testified:

" I have seen the plaintiff from one to four times a week all the time since he has been out here since the accident. I knew him before the accident for about ten years.   I saw him the night of the accident.   Immediately prior to the accident, when I saw him that night, he was apparently in good physical condition.   When I first saw Mr. Webster after the accident he was in bed at his mother's house; I didn't see him until he got home.   It was the next day after the accident.   I saw him twice more that week.   He seemed to be suffering greatly; he was unable to move himself in bed without great pain.   He would catch his leg and lift it with his hand—his left leg.   I didn't see it that week; when I saw it it was considerably swollen.   He could not use the leg; it had a very big appearance.   I don't believe I saw the other leg; I don't remember noticing any marks on the leg.   When I first saw him, Saturday evening, before he went to St. Louis, or the Saturday evening week, I am unable to give the date, it was the latter part of July or early in August of the present year, he was lying on the couch; seemed very much depressed; much more so than I had seen him since he commenced to improve.   He did not care to talk about anything; wanted to lie down and be quiet.   Then he got up and went out of the sitting room into the dining room and sat down at the dining table, laid his arms on the table and his head on his arms. In a few minutes I saw him begin to turn over and by the time I got there he was down on the floor, and appeared to be dead to me.   He remained in that condition for quite a while.   We then picked him up and carried him into the sitting room and laid him on the bed, and he recovered from the swoon in a short time, but went off into another

after awhile. I think from eight o'clock until twelve he swooned away three times. Between these times he was delirious and every once in a while he seemed to be possessed of almost superhuman strength. He would clutch at his heart and I had to hold his hands. I believe he would have torn his flesh. He would catch his skin and flesh over his heart and try to jerk it out just as hard as he could. He seemed to be suffering very greatly in that region. I didn't examine his side after that. I do not know how long these spells lasted; I judge the worst of these spells lasted from forty minutes to an hour; he had three of them between eight o'clock and twelve. Between these spells he would faint away and be apparently lifeless. I call the spells the time he fainted away. When he would recover from this fainting spell he would be delirious. The trouble was apparently in the region of his heart; he was clutching at his heart all the time. This was the Saturday night week, I think, before he went to St. Louis. After the injury, the first walking I saw him do was with two crutches under his arms; that must have been a month or two after he was injured. He went with two crutches for quite a long time; a month and a half or two months probably. When he walked with crutches his left leg dragged."

Q. "Well, what was his ability, if you know, to advance his left leg in front of his right leg?"

Objected to by counsel for defense.

The Court: "If he knows he may tell."

To which ruling of the court the defendant by its counsel then and there excepted.

Witness: "He could not advance his left leg in front of his right. I saw him walking every time I was there. He could step on his right foot, then as he would come forward his left leg would drag. His motion was very slow."

The witness Baird testified:

"I was present and saw Webster have these spells, one at his home some two weeks after he was injured. He seemed unconscious and didn't know me; didn't seem to know what he was doing. In about thirty minutes he seemed to realize his condition; seemed to know me and where he was. The first thing after he came to himself, he put his hand on his left breast. He kept placing his hand on his left side, the back of his neck and his left hip, after he came to himself. He seemed to have pain there. When I first went there he was in a spell and appeared to be suffering a great deal of pain. He was lying on his back on the couch. We

City of Salem v. Webster.

turned him over on his side, his mother and I.  I was there some two or three hours.  When he put his hand to his side he groaned and would draw up his face like he was suffering pain; he would rub his side with his hand.  I was present when he was taken to the train to be taken to St. Louis.  He could not handle himself at all.  He was placed on a couch; I furnished a wagon; the couch was placed in the spring wagon and hauled to the depot and taken out, and he was carried into the depot on the couch.  He was very weak from nervousness.  I helped him on the train; we spread some comforters on a board and laid him on the board and shoved him in at the coach window in the sleeper."

Q.  "Why was he put in that way, if you know?"

Objected to by counsel for defendant.

The Court:  "If he knows he may tell."

To which ruling of the court defendant by its counsel then and there excepted.

The Witness:  "Because he was unable to walk in and we could not turn him and take him in at the door."

Every statement of fact by a witness contains an element of conclusion of the witness, from facts not stated.  The general rule is, that the conclusions of a witness derived from personal observation are admissible in evidence, when, from the nature of the subject under investigation, it can not be stated or described in such language as will enable persons not eye-witnesses to form an accurate judgment in regard to it.  This rule is almost universally recognized where English language and English law prevail.  In Abbott's Trial Evidence, 2d Edition, page 753, the author says:

"Any witness of ordinary intelligence and powers of observation, who is conversant with the facts, may testify whether a person appeared sick or well; worse or better at one time than another; able to work; how far able to help himself, and at what point requiring assistance to do what was necessary to be done."

The statements of these two witnesses, complained of, are of the same general character as many of their statements not objected to, and when considered in the light of the context, fairly fall within the general rule.

Certain physicians and surgeons, who had treated appellee for his injuries, in course of testifying as to his condition

and the course of treatment prescribed, were allowed to state, over appellant's objections, what appellee at such times told them in describing his bodily condition.   Some of these instances were after the commencement of this suit, but they were all made to appellee's physicians during actual treatment and in direct connection therewith, and there is nothing in this record to justify any reasonable suspicion of improper motive or bad faith on the part of appellee on any of these occasions.   When such statements are made to a physician during treatment and in connection therewith, the mere fact of pending litigation does not render them incompetent.   In I. C. R. R. Co. v. Sutton, 42 Ill. 438, our Supreme Court says:

" A physician, when asked to give his opinion as to the cause of a patient's condition at a particular time, must necessarily, in forming his opinion, be, to some extent, guided by what the sick person may have told him, in detailing his pains and sufferings.   This is unavoidable, and not only the opinion of the expert, founded in part upon such data, is received in evidence, but he may state what his patient said, in describing his bodily condition, if said under circumstances which free it from all suspicion of being spoken with reference to future litigation."

This is adhered to in West Chicago St. R. R. Co. v. Carr, 170 Ill. 478.

Appellee's counsel asked a witness to tell the jury if he knew if any of the city authorities' attention was called to the condition of the ditch before the accident.   The witness answered :   " I told some one, I don't remember who." Appellant's counsel objected to the answer and moved that it be stricken.   The court overruled the objection.   (In this connection there were other objections but this is the only one preserved by an exception.)   This answer left the meaning of the witness somewhat in doubt, but his next statement makes it clear.   He said :   "I don't know whether it was the city authorities or not."   If we consider all that was complained of in this connection, appellant was not and could not have been prejudiced by what occurred.   The question of knowledge on the part of the

city authorities, of the condition of the street prior to the injury, was not a contested issue.   Appellant admits that " in the latter part of July this ditch, cut with a grader across Church street, had become partly filled up, and to relieve the accumulation of water at that point the street commissioner caused it to be again opened with spades; the original depth as dug at this time was from four to six inches at the ends and from ten to fourteen inches in the center of the street; the dirt was thrown in the street on the sides of the ditch, which made a depth from the top of this dirt to the bottom of the ditch of from fourteen to eighteen inches, but not straight up and down, as the dirt was back a little from the edges; the ditch was from twelve to nineteen inches wide."   And appellant does not deny the established fact, that this ditch was left by the city authorities who had caused it to be dug, wholly unprotected and without light or danger signal during the night time. A jury could not have found otherwise, on the admitted and undisputed facts, than that the ditch, as constructed and left, was a dangerous obstruction to travel upon that public street, and that the city, through its officers and agents, was guilty of negligence in respect thereto.

Appellant's counsel contend that the trial court erred in sustaining objections to certain questions asked by them on cross-examination of appellee's witnesses, and in refusing to admit certain evidence offered on behalf of appellant.   We do not regard any of the objections urged against the rulings of the trial court as to questions asked by counsel for appellant on cross-examination of sufficient importance to warrant detailed discussion.   In most instances the questions to which objections were sustained were clearly not proper cross-examination.   Great liberty in cross-examining witnesses was allowed by the court and availed of by counsel for appellant, and upon the whole record we find no substantial error, prejudicial to appellant, in the court's rulings pertaining thereto.

Appellant produced the street commissioner and offered to prove by him that Dr. Schoonover, one of appellee's wit-

nesses, had objected to barriers being put up in the vicinity
of the ditch in question. There was no error in the court's
refusal to admit such evidence. Dr. Schoonover was not.a
party plaintiff, but only a witness; and no proper founda-
tion is shown to have been laid, upon which to introduce
such evidence for the purpose of impeachment. Appellant's
counsel offered to prove that appellee was ordinarily a rapid
driver, and in pursuance of such offer produced a witness
and asked him if he was "familiar with plaintiff's method
of driving." To this question the court sustained an objec-
tion. Appellant's counsel excepted and one of them stated:
" I desire to show by this witness that the plaintiff was
ordinarily a rapid driver." The court refused to admit the
proffered evidence. This ruling is correct; the evidence
was clearly improper to be received. There is direct testi-
mony in this record, tending to show the speed at which
appellee was driving at the time of the injury, and tending
to show generally the degree of care and caution he was
exercising for his own safety. In such case proof of gen-
eral habit or character of the injured party, as to care and
caution, is not proper.

Appellant's counsel insist that the trial court refused to
allow them to prove that appellee was "petted and pam-
pered," and that in this the court erred. Dr. Rainey, testi-
fying on behalf of appellant, had stated that he was
acquainted with appellee; had known him all the time he
had lived there; that appellee was a boy when he first knew
him; that he had never treated him for sickness, but had been
at his house a good deal; that appellee was of very nervous
temperament; that about five or ten years ago he had
treated him for an injury to his hand caused by the explo-
sion of a cartridge; that he had administered chloroform
and removed the foreign substances and dressed the wound,
and it got along all right. Appellant's counsel then said
to the witness: "How about his being petted and pam-
pered?" Objection was interposed, sustained, and excep-
tion noted. The question is obscure, and seems to assume
that appellee was "being petted and pampered," and that

the witness knew something about it.   The subject-matter appears remote, and  no  statement was  made or  offered to be made by appellant's counsel as to  the purpose or  scope of  the proposed inquiry.   We  are  of  opinion that under the circumstances  it was not  error  on the part of the trial court to sustain the objection, and in looking at the question now, in  the  light of  the  scope  and  purpose disclosed in appellant's brief, we are of opinion  that  the subject-matter of the proposed inquiry, taken  in  connection with all the evidence  in  this  record, is  too remote  to be  of  sufficient value to warrant the court in entering upon it.

Appellant assigns as error the giving by the trial court of the first instruction on behalf of appellee.   The instruction is as  follows:

" 1.   The  court  instructs the jury that all incorporated towns, villages and cities in this State  have the power and it is their duty to keep their streets within their  corporate limits  in  reasonably safe repair and  condition for  travel over them, and  if  you  believe  from  the evidence in this case that  the plaintiff was  passing over and  along one of the  streets  of  the  defendant, and  was using  due  care and  caution for his own personal safety, and if you further believe from the evidence that the defendant had previously thereto dug the ditch and  negligently allowed it to remain open and unguarded as is alleged  in the plaintiff's declaration, and if you further believe  from  the evidence  in this case that the plaintiff while  using due care and caution for his own personal  safety  was  injured  in manner and form as is charged in plaintiff's declaration, then you should find the defendant guilty and assess plaintiff's damages at such an amount as you  believe  will  compensate him  for said injuries."

Many objections are urged against this instruction, and if it be tested by a proper model, designed  to  state all the law that might be involved in a  possible case of this general character, then  some of these  objections would not be without much force;  but the scope and language of a particular instruction must be considered by appellate  courts with reference to all the facts and conditions of the particular case in which it appears, as disclosed by the entire record

before the court.  As an abstract proposition, or as applicable to a large class of cases that have arisen or that may arise, this instruction does not lay down the law correctly as to the duty of a city with respect to its streets.  Ordinarily it is not the duty of a city to absolutely keep its streets in reasonably safe repair, but only to exercise reasonable diligence to keep its streets in reasonably safe repair. But in this case appellant, by its own voluntary act, converted one of its public streets which was in reasonably safe repair into one that was clearly unsafe and dangerous, and without any lawful excuse therefor kept it in unsafe and dangerous condition for weeks.  When applied to such facts the instruction correctly states the duty which the law imposes.  City of Beardstown v. Smith, 150 Ill. 169, is a case involving the same principle, and in which the duty is laid down in substantially the same language as that used in the instruction complained of.  It is contended that the instruction is erroneous because it ignores the question as to how much or what portion of the street should be kept in reasonably safe repair.  The general rule is, as laid down in City of Spring Valley v. Gavin, 182 Ill. 232, " One traveling upon a street in constant use by the public has the right to presume, in the absence of knowledge of its dangerous condition, that it is reasonably safe for ordinary travel throughout its width."  There are many conditions to which this general rule does not apply, but the case before us clearly falls under the rule.  The objections that the instruction does not name the street and that it ignores all casual connection between the wrongful acts charged and the injury complained of, when we consider the whole instruction, in the light of the declaration, evidence, and other instructions in the case, seems to us to be rather hypercritical.  It is further contended that this instruction limits the due care required of appellee, to the very instant of the injury.  We do not so understand the instruction.  The jury could not have understood the words, " while using due care and caution for his own personal safety," used in this instruction, otherwise than as referring

"to the occasion," "to the whole transaction," and in this respect this instruction falls within the holding of our Supreme Court in McNulta v. Lockridge, 137 Ill. 270, and in L. S. & M. S. Ry. Co. v. Johnson, 135 Ill. 641. And finally, it is contended that the instruction in its last clause is imperative, while it should have been only permissive. There is no error in the instruction in this respect. Exemplary damages are not involved in the issue. In an action where exemplary damages are recoverable and are sought to be recovered, it is error to instruct the jury that it is their duty to assess damages, or that they "should assess damages;" but not so in a case where compensatory damages only, are recoverable. In Consolidated Coal Co. v. Haenni, 146 Ill. 614, it is said :

"Where the plaintiff has exercised ordinary care and the defendant has been guilty of such negligence as has caused injury, the law says that the plaintiff is entitled to receive such damages as will compensate him for the loss actually sustained by him. In such case we can not see that it is wrong to tell a jury that it is their duty to award, by their verdict, what the law awards by its established principles. An instruction to that effect merely tells them to obey the law."

Counsel for appellant presented to the trial court thirty-one separate instructions and asked the court to give them to the jury. The court gave some of them as asked, modified others and gave them as modified, and refused a number of them. It is contended that the court erred in each instance, in its modification of the instructions modified, and in its refusal to give those refused. We have carefully examined the modified instructions and find that in each instance the modification made by the court is proper and that the modified instruction as given, is substantially correct. While some of the refused instructions state the law correctly, yet the instructions given fully cover every issue in the case, and state the law most favorably to appellant. The practice of presenting to the court a large number of instructions, repeating over and over again the same propositions of law, has often been condemned by our courts.

When a number of instructions are asked by the same counsel covering the same principle of law, if the court in selecting does not give the one stating the law most favorably to the party so asking, he has no cause of complaint against the court. In Adams v. Smith, 58 Ill. 417, the court says :

" The series of instructions * * * comprised the number of eighteen. * * * We do not propose to enter upon a critical examination of the legal principles sought to be announced in every one of them. To do so would require us to write a treatise. * * * We have not the time * * * to enter upon such a work. We do not understand why it is that counsel, when they have a good case, will seek to incumber it with such a multitude of instructions, the almost inevitable effect of which is, to introduce manifest error into the record. Such practice does not enlighten the minds of the jury on the issues submitted to them, but rather tends to introduce confusion. * * * It was never contemplated, under the provisions of the practice act, that the court should be required to give a vast number of instructions. * * * It is a mischievous practice, and ought to be discontinued. A few concise statements of the law applicable to the facts are all that can be required."

In I. C. R. R. Co. v. Chicago Title and Trust Co., 79 Ill. App. 623, the court says :

" Appellant's counsel asked thirty-nine instructions, thirteen of which, some of them modified, were given and the remainder refused. Counsel now object to the modification of the instructions modified and the refusal of those rejected. We decline to pass on these objections. Such a large number of instructions in such a case as this is wholly unnecessary." And in I. & I. S. Ry. Co. v. Wilson & Son, 77 Ill. App. 603, it is said : " Appellant presented to the court and asked the court to give thirty-six separate instructions. * * * The court refused some of them; among the refused ones is one that ought to have been given. * * * No judge can be expected, within the time at his disposal on such occasions, to properly examine and pass on so many * * * instructions, repeating the same things over and over again in complicated and involved phraseology, and not make some mistakes. No such number of instructions * * * are ever necessary to a proper statement of the law in such case as this. To present such number of instruc-

City of Salem v. Webster.

tions in a case as simple as this one, is to invite error and become a party to it."

Counsel call our attention to the tenth clause in their motion for new trial, which is, that appellee's " counsel in his address to the jury at the close of all the testimony, over the objections of the defendant, made improper remarks and statements to the jury which were calculated to and did prejudice the minds of the jury against the defendant, and which were not warranted by the evidence in this case." There is set out in the abstract more than thirty pages from the address to the jury, of the Hon. T. E. Merritt, one of the attorneys for appellee. The remarks of counsel covered quite a wide range, and at a number of points, we think, passed outside of the record and quite beyond proper bounds; but the only part of the remarks of counsel, now complained of, that is covered by the objection and embraced within the motion and assignment of error, is the words, "Would you have run into St. Louis to get pimps and detectives? Would you have gone to Chicago and employed detectives of the Pinkerton gang to have gone to St. Louis and followed through the hospital after this man? There is but one man would have done it and he is the mayor of the city of Salem." To this appellant's counsel objected. The judge said: "I was busy and did not hear what was being said." The reporter then read the foregoing to the court and the judge remarked, " That is a matter of argument and may be answered." Appellant's counsel excepted, and insist that the remarks of counsel were improper and prejudicial and that the ruling of the court is error. One of the principal defenses relied on by appellant during the trial was that appellee was not injured ; that he was malingering and deceiving his surgeons and physicians and friends; and in an attempt to support this theory, certain female witnesses were brought from St. Louis and put upon the stand, and there is testimony tending to show that appellant had procured a detective from Chicago to go to St. Louis while appellee was in the hospital there, and look up evidence along this line, and that these witnesses

were discovered and produced by the detective.   An attor-
ney must be allowed to discuss not only the words of the
evidence, but to suggest and discuss any and all inferences
that may be drawn from it, and also to discuss the interest,
motive and character of witnesses and the means resorted
to to procure them, so far as the evidence and reasonable
inferences therefrom will warrant.

It is contended that the amount of damages awarded by
the jury is excessive, and that for that error the cause
should be reversed.   Appellee was a young man twenty-
three years of age, pursuing the study of law preparatory
to admission to the bar, and engaged in the business of
publishing a newspaper.   The evidence conclusively shows
his right to recover and strongly tends to show that prior
to the injury he was a strong and healthy man, and that he
was severely and permanently injured; that he suffered
great pain therefrom; that he has been unable to prosecute
his studies or to do any work, either physical or mental,
since he received the injury; that he resorted to every proper
means in his power to effect a cure of the injuries; that he
expended for surgeons, physicians, hospital care and for
other necessary expenses of treatment, the sum of $1,465.45.
We are of opinion that the $3,000 assessed by the jury
is not excessive.   While this record is not wholly free
from error, we find no error of sufficient importance to call
for a reversal of the case.   It is clearly apparent from the
whole record that substantial justice has been done, and in
such case it is the established law in this State, that the
judgment of the trial court will not be reversed for tech-
nical or trivial errors.

The judgment of the Circuit Court is affirmed.